**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| LeRoy K. Wheeler, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **RE DEFENDANTS' MOTION FOR** |
| vs. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| State of North Dakota, Tim Schuetzle, and | ) | |
| Leann K. Bertsch, | ) | Case No. 1:07-cv-075 |
| | ) | |
| Defendants. | ) | |

_____

## I.    PROCEDURAL BACKGROUND

Plaintiff LeRoy K. Wheeler is an inmate at the North Dakota State Penitentiary ("NDSP").

On October 26, 2007, he filed a *pro se* complaint alleging violations of 42 U.S.C. § 1983.  The

complaint was screened pursuant to 28 U.S.C. §1915A.  Wheeler was permitted to proceed with the

following two claims, but only against the individually-named defendants in their official capacities:

1.    retaliation by NDSP staff; and

2.    disclosure of sensitive prison communications and the labeling of Wheeler as

       "snitch."

What follows is the undersigned's report and recommendation with respect to the

defendants' motion for summary judgment.

II.     **ANALYSIS**

    A.     **Retaliation claim**

        1.     **Background**

A liberal reading of Wheeler's complaint identifies a single act of alleged retaliation arising out of a disciplinary charge initiated against Wheeler by Sharon Schumann, the Assistant Food Services Director at the NDSP. In late September 2007, Schumann charged Wheeler with disorderly conduct, a "minor rule infraction" under the NDSP's disciplinary procedure. Schumann claimed that Wheeler was spreading rumors that she was engaged in a sexual relationship with prisoner Derek Stanton, Wheeler's arch-nemesis. (Doc. No. 73-10, Ex. 3). At the time, both Stanton and Wheeler were part of the kitchen staff.

Wheeler contested the disorderly conduct charge. But, on October 1, 2007, it was upheld by Wheeler's Case Manager, Steve Heit. The discipline imposed was loss of kitchen pay and use of electronics for ten days. (Doc. No. 73-10, Ex. 3).

Wheeler filed a grievance against Schumann the next day, claiming she initiated the disorderly conduct charge in retaliation for Wheeler having exposed "corruptive activity" involving prisoner Derek Stanton and NDSP kitchen staff. Wheeler contended that Stanton and others were trying to drive him out of his kitchen job by falsely accusing him of having made statements that Schumann and Stanton were engaged in a sexual relationship. Wheeler claims that Schumann conspired in this effort by initiating the disciplinary charge knowing the reports of his statements about a sexual relationship with Stanton were untrue. In his grievance, Wheeler asked that the disciplinary charge be dismissed and that "sanctions" be imposed. (Doc. No. 73-10, Ex. 4).

Following the filing of the grievance, NDSP Unit Manager Jean Sullivan reviewed the disciplinary charge and a decision was made to reverse the finding of the infraction and to reinstate Wheeler's use of electronics and pay.  According to the NDSP's contemporaneous records, the concern was over the sufficiency of the evidence.   (Doc. No. 73-10, Ex. 3).  In an affidavit filed in this action, Sullivan elaborated that her concern over the sufficiency of the evidence had to do with the fact that the charge against Wheeler was based solely upon a  written note from a confidential informant that was uncorroborated. (Doc. No. 73-5).

In the formal response to Wheeler's grievance against Schumann, Case Manager Heit dismissed the grievance on the grounds that the disciplinary charge had been dismissed and that Wheeler's privileges had been reinstated.  (Doc. No. 73-10, Ex. 4).  While this satisfied part of the relief that Wheeler sought, it did not address the merits of the charge that Schumann retaliated against Wheeler nor did it address his request for sanctions.

This partial resolution of Wheeler's grievance occurred at the "Step 1" level of the NDSP's grievance procedure.  (Doc. No. 73-10, Ex. 1).  Under the NDSP's grievance procedures as spelled out in the Inmate Handbook, Wheeler had the further right to seek review from the Warden ("Step 2") and from there appeal any adverse decision to the Director of the North Dakota Department of Corrections and Rehabilitation ("NDDOCR").  (Id.).  Wheeler acknowledges in his deposition testimony that he did not go beyond "Step 1."  (Doc. No. 73-2, pp. 16-17).

Defendants request that Wheeler's retaliation claim be dismissed for failure to exhaust prison remedies and on the merits.

3

### 2.      The PLRA's exhaustion requirement

The Prison Litigation Reform Act, at 42 U.S.C. § 1997e(a), provides that "[n]o action shall

be brought with respect to prison conditions under section 1983 . . . until such administrative

remedies as are available are exhausted."  This exhaustion requirement "applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong," Porter v. Nussle, 534 U.S. 516, 532 (2002), even

when  the prisoner seeks relief that is not available through the prison administrative process, such

as money damages, Booth v. Churner, 532 U.S. 731 (2001).  Further, §1997e(a) requires "proper

exhaustion," meaning that the prisoner must fully exhaust the prison remedies that are available,

including complying with the administrative deadlines and other critical procedural rules, or face

the possibility of the loss of the claim for procedural default.   Woodford v. Ngo, 548 U.S. 81, 87-

103 (2006).  Finally, the exhaustion requirement is an affirmative defense that must be pled and

proved by the defendant.  Jones v. Bock, 549 U.S. 199, 211-217 (2007).

### 3.      Wheeler's failure to exhaust his administrative remedies

As noted above, Wheeler acknowledges he did not go beyond "Step 1" of the NDSP's

grievance procedure with respect to his claim of retaliation by Schumann.  He argues, however, that

this was sufficient to exhaust the claim because it resulted in the dismissal of the disciplinary charge

against him.  The dismissal of the disciplinary charge on grounds of insufficiency of the evidence,

however, did not address the merits of his claim of retaliation, nor did it give Wheeler all of the

relief he was seeking, namely that sanctions be imposed against Schumann.  If dissatisfied with that

result, Wheeler had the opportunity to seek further review, first from the Warden and then by filing

an appeal with the Director of the NDDOCR.  Under the foregoing cited case law, stopping at "Step

1" and not pursuing the other available remedies does not amount to proper exhaustion.  See also

Lyon v. Vande Krol, 305 F.3d 806, 808-809 (8th Cir. 2002)  (en banc).[1]

Currently, the courts are split over the question of who decides disputed facts that are

material to the failure-to-exhaust defense: the court or the jury.  Compare Bryant v. Rich, 530 F.3d

1368, 1376-77 (11th Cir. 2008); Pavey v. Conley, 528 F.3d 494, 496-97 (7th Cir.2008); Wyatt v.

Terhune, 315 F.3d 1108, 1119-20 (9th Cir.2003) with Maraglia v. Maloney, 499 F. Supp. 2d 93, 97-

98 (D. Mass. 2007); Lunney v. Brureton, 2007 WL 1544629 (S.D.N.Y. 2007).[2]  So far, it does not

appear that the Eighth Circuit has explicitly ruled on this issue.  Butler v. Wards, 2008 WL 4643181

(E.D. Ark. 2008) (noting this is an unresolved issue in the Eighth Circuit).  However, in Foulk v.

----

[1]  In his brief, Wheeler makes reference to other alleged acts of retaliation by Schumann, which are not fairly encompassed within the allegations set forth in the complaint, but which he claims are "pattern evidence."  He also claims that the Warden retaliated by threatening to transfer him to another institution.  This latter claim of retaliation is also not fairly encompassed within the complaint, but, even if it was, it also has not been properly exhausted. The record indicates that Wheeler sent a letter to Warden Schuetzle on July 25, 2007, about rumors that he might transfer Wheeler to another institution.  The Warden responded by written memorandum dated July 30, 2007. (Doc. No. 73-5, Ex. 6 & 9).  The sending of the letter to the Warden did not constitute proper exhaustion for two reasons.  First, the letter was not in conformance with the NDSP's grievance procedure because there is no indication it was intended to be a formal grievance and, more importantly, because it was not preceded by completion of "Step 1" of the grievance procedure, which required that the issue be raised first with the prisoner's case manager. (Doc. No. 73-10, Ex. 1).  Second, there is no indication that Wheeler sought further review of the Warden's response by appealing to the Director of the NDDOCR  (Doc. Nos 73-5 & 94.  Wheeler acknowledges in his brief that the only effort he made was to write the Warden, but claims that was the only procedure that was available.  However, Wheeler is clearly wrong on that point. The NDSP's grievance procedure allows prisoners to grieve acts of retaliation following the established procedures. (Doc. No. 73-10, Ex. 1).

[2]  The courts are also split over the proper procedure for addressing failure to exhaust prison remedy defenses. Some courts have concluded that Rule 56 summary judgment procedures are inappropriate and that the defense be addressed as a Rule 12(b) motion while other courts disagree and hold that addressing the defense upon summary judgment is appropriate.  Compare, e.g., Bryant v. Rich, 530 F.3d at 1374-77; Wyatt v. Terhune, 315 F.3d at 1044-45; with Benavidez v. Stansberry, 2008 WL 4279559, at *6-8 (N.D. Ohio 2008).  The Eighth Circuit in ruling on cases in which the issue has been resolved by summary judgment has never suggested that the underlying procedure was inappropriate.  E.g., Wallace v. Correctional Medical Services, 2009 WL 1587709 (8th Cir. 2009) (unpublished per curiam); Moore v. Schuetzle, 289 Fed.Appx. 962, 2008 WL 3891506 (8th Cir. 2008) (unpublished per curiam).  But, obviously, a hearing may be required in some cases if it is the court's role to decide disputed facts, regardless of the label that is attached to the process. In this case, there are no disputed facts material to the failure-to-exhaust defense that require a hearing.

Charrier, 262 F.3d 687, 697-698 & n.7 (8th Cir. 2001), the Eighth Circuit discussed the lack of

evidence presented by the defendant during a jury trial with respect to the exhaustion issue and noted

that the defendant had not attempted to supplement the record in his post-trial motion for judgment

or on appeal.  These observations would seem to be inconsistent with the idea that the issue would

be resolved by the jury.   In this case, however, it does not make any difference since there are no

material issues of disputed fact relevant to the resolution of the failure-to-exhaust defense.

    Also, what is not clear is whether the dismissal for failure to exhaust should be with

prejudice or without prejudice.  In most, if not all, of its recent cases, the Eighth Circuit has directed

that the dismissal be without prejudice, citing frequently to Calico Trailer Mfg. Co. v. Ins. Co. of

N. Am., 155 F.3d 976, 978 (8th Cir. 1998).  E.g., Wallace v. Correctional Medical Services, 2009

WL 1587709 (8th Cir. 2009) (unpublished per curiam); Jones v. Douglas County Corrections

Center, 306 Fed.Appx. 339, 349, 2009 WL 56994 (8th Cir. 2009) (unpublished per curiam); Moore

v. Schuetzle, 289 Fed.Appx. 962, 2008 WL 3891506 (8th Cir. 2008) modifying Moore v. Schuetzle,

486 F. Supp. 2d 969 (D.N.D. 2007) (unpublished per curiam) (modifying the dismissal of the claim

determined to be unexhausted to be without prejudice);  Washington v. Uner, 273 Fed.Appx. 575,

577, 2008 WL 1723475 (8th Cir. 2008); Maddix v. Crawford, 216 Fed.Appx. 605, 606, 2007 WL

465518 (8th Cir. 2007); see Wolf v. Johnson, 2009 WL 585971, at *9 (D. Minn. March 6, 2009)

(citing other Eighth Circuit cases).  And, there are some courts that appear to take the position that

the dismissal must be without prejudice for failure to exhaust prison remedies because the dismissal

is not a ruling on the merits of the claim.   E.g., Bromfield v. McBurney, 2009 WL 674517, at

*11(W.D. Wash. 2009); see Bryant v. Rich, 530 F.3d at 1379.

    On the other hand, some courts have concluded that dismissal with prejudice may be

appropriate, at least in those cases where prison authorities have denied administrative relief based

upon a procedural default of available prison remedies.  See, e.g., Reynolds v. Harris-Spicer,, 2008

WL 4534136, at *18 (W.D. Mich. 2008).  This makes sense, at least when the prisoner has not

otherwise demonstrated why lack of compliance with the prison's procedural requirements should

be excused; otherwise, there could be an endless loop of further denials of administrative relief by

prison authorities and dismissals without prejudice by the court.

Still other courts have held that dismissal with prejudice is appropriate when it appears that

no further administrative remedy would be available, such as when a time deadline for complying

with the administrative process has lapsed, even absent a declaration by prison authorities that there

has been a procedural default.  E.g.,  Williamson v. Wexford Health Sources, Inc., 131 Fed.Appx.

888, 890-891 (3rd Cir. 2005) (unpublished per curiam); Wolf v. Johnson, supra, at *9; Benvidez v.

Stansberry, 2008 WL 4279559, at *12 (N.D. Ohio 2008).

In this case, it is recommended that the dismissal of the retaliation claim be *without prejudice*

given the uncertainty of the case law in the Eighth Circuit and the direction this court received in

Moore v. Schuetzle, supra, which involved the same NDSP administrative scheme as in this case.[3]

The defendants have also argued the merits of the retaliation claim.  However, given that the

---

[3]  NDSP's grievance procedures are spelled out in the Inmate Handbook.  Presumably, they were adopted
pursuant to the authority granted the Warden by N.D.C.C. §§ 12-47-11 & 12-47-12.  They are not, however, subject to
North Dakota's Administrative Agencies Practice Act.  N.D.C.C. § 28-32-01(2)&(11).  And, while the grievance
procedures do not specifically provide for exceptions, waivers, or variances, the granting of such may be within the
discretion of the Warden and/or the Director of the NDDOCR, as well as the authority to address issues on the merits,
notwithstanding any failure to comply with specified procedures.  Cf. Woodford v Ngo, 548 US. at 101 (noting the
assertion by respondents that most grievance systems give administrators the discretion to her untimely grievances).
Thus, in any particular case when the deadline for complying with prison remedies has passed, there may still be a
question as to whether further administrative remedies are available, at least absent an explicit determination by prison
officials that a procedural default bars further consideration.  Or, to put it another way, there may be some justification
for dismissing unexhausted claims without prejudice until there has been a determination by prison officials that a
procedural default bars further relief.  This may be particularly true since the exhaustion process,  including presumably
any exceptions, is defined by the prison's administrative procedures and not by the PLRA.  Jones v. Bock, 549 U.S. at
218.

claim is unexhausted, the court is not permitted to reach the merits absent there being present one

of the grounds set forth in §1997e(c)(2), which specifically allows for dismissal of a claim that on

its face is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune

defendant, notwithstanding a failure to exhaust.  E.g., Wallace v. Correctional Medical Services,

supra (Eighth Circuit directing dismissal without prejudice of an unexhausted claim that was

dismissed by the district court on the merits); Moore v. Schuetzle, supra (same); Fitzgerald v.

Corrections Corporation of America, 403 F.3d at 1140-41; Perez v. Wisconsin Dept. of Corrections,

182 F.3d 532, 534-537 (7th Cir. 1999); see Jones v. Bock, 549 U.S. 199, 211, 219-20 (2007)

(unexhausted claims cannot be brought in court or considered).

      **B.**      **Disclosure of Wheeler's prison communications and labeling him as a "snitch"**

The second claim that Wheeler was allowed to proceed with has to do with the allegation that

NDSP prison officials failed to keep confidential reports by Wheeler of purported "criminal activity"

and "corruption" by other inmates, and possibly also prison staff, and that this had the impact of

labeling Wheeler as a prison "snitch."   The defendants concede that Wheeler exhausted this claim

to the extent of the grievance he filed on September 6, 2007, the denial of which was pursued

through an appeal to the Director of the NDDOCR.  (Doc. No. 73-11, Exs. 11-14).  In that grievance,

Wheeler contended that the confidentiality of his communications was not being maintained and

specifically that a communication he sent to Chief of Security Stromme on September 6, 2007, had

been disclosed to prisoner Stanton.  (Id.)

The only evidence that Wheeler has produced in response to the affidavits from prison

officials denying that his communications have been disclosed to other inmates is his claim that, in

a couple of instances, he overhead certain inmates repeat information he claims he reported

confidentially to NDSP staff, suggesting that NDSP staff must have disclosed the information to the

8

other inmates.  Upon careful consideration of this evidence in the context of what Wheeler claims

occurred, it amounts to nothing more than speculation and conjecture that the confidentially of his

communications was breached by NDSP prison staff, much less that there conduct amounting to a

violation of constitutional rights.  Wheeler's evidence does not sufficiently eliminate the other ways

in which the inmates could have acquired the information, nor the possibility that any disclosure was

inadvertent or even negligent.  Further, Wheeler has failed to demonstrate that he has been subjected

to a substantial risk of danger.  Saunders v. Tourville, 97 Fed.Appx. 648 (7th Cir. 2004) (no Eighth

Amendment claim for an inmate who suffers only the risk of physical harm) (unpublished order);

Doe v . Magnuson, 2005 WL 758454, *15-16 (D. Me. 2005) (no Eighth Amendment claim in the

absence of a substantial threat of danger).

Finally, the equivocal evidence proffered by Wheeler is insufficient to warrant the drastic

relief of this court enjoining the conduct of state officials.  Cf.  Rizzo v. Goode, 423 U.S. 362, 380

(1976); Morrow v. Harwell, 768 F.2d 619, 627 (5th Cir. 1985).  This particularly true given the

evidence proffered by the defendants.  The record indicates that the NDSP has in place policies and

procedures to protect Wheeler from the wrongs he complains about.  For example, an inmate is

allowed to file a grievance directly with the Director of the NDDOCR by mail when the "grievance

is of a sensitive nature and your fear possible adverse effects if it is known at the institution . . . ."

(Docket No. 73-10, Ex. 1).  And, there is no evidence that Wheeler ever availed himself of this

procedure.  Further, there is the contemporaneous evidence proffered by the defendants that the

Warden and prison staff are sensitive to the consequences of an inmate being perceived as an

informant or a "snitch."  (Docket Nos. 73-11, Exs. 7, 8, 9, 11, 12; 73-5; 94-14).  In fact, as Wheeler

acknowledges, the Warden frankly discussed with him (1) the differences between reporting

wrongdoing based on actual evidence, and not mere conjecture and speculation, and simply being

9

a "busybody," and (2) that Wheeler needed to take appropriate care if he insisted on reporting wrongdoing on the part of other prisoners, so as not to put himself at risk.  (Docket No. 73-11, Ex. 9).

Quite simply, the evidence proffered by Wheeler does not support a need for this court's intervention.  And, since the claims in this case are being brought against the State of North Dakota and the individually-named,  state-employee defendants in their official capacities only,  the Eleventh Amendment bars any claim for damages.  See, e.g., Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007).

Based on the foregoing, the remainder of Wheeler's claims are subject to dismissal on the merits.


## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that the defendants' motion for summary judgment (Doc. No. 72)  be **GRANTED** and that

1.      Wheeler's claim of retaliation be **DISMISSED WITHOUT PREJUDICE** on

        account of his having failed to properly exhaust available prison remedies.

2.      The remainder of Wheeler's complaint be **DISMISSED WITH PREJUDICE**.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

Pursuant to D.N.D. Civ. L. R. 72.1(D)(3) any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.

Dated this 18th day of June, 2009.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge